UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES F. TERWILLIGER, JR.,

                              Plaintiff,

v.                                                    3:06-CV-0149
                                                      (FJS/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

CHARLES F. TERWILLIGER
Plaintiff *pro se*

HON. ANDREW T. BAXTER
Acting United States Attorney for the
Northern District of New York
Counsel for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

OFFICE OF GENERAL COUNSEL            BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278             ARTHUR SWERDLOFF, ESQ.
                                      Special Assistant U.S. Attorney

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

## I.    BACKGROUND

       Plaintiff Charles F. Terwilliger was found to be under a disability as defined by the Social

Security Act ("Act") beginning September 7, 1978 due to paraplegia.  (T. at 14, 64.)  Based on this

---

[1]   This matter was referred to me for report and recommendation by the Honorable Frederick J. Scullin, Senior
United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

finding, Plaintiff received Disability Insurance Benefits ("DIB").  *Id.*  The following procedural history is somewhat convoluted.

In May of 1997, Plaintiff began working full-time as a social worker.  (T. at 26.)  Plaintiff reported this change in his work status to the Social Security Administration ("SSA") in an SSA form titled "Work Activity Report" on May 19, 1997.  (T. at 26-27.)  Plaintiff continued to report that he was working as a social worker in Work Activity Reports dated December 28, 2000, and May 28, 2001.  (T. at 35-40, 51-56.)  Meanwhile, the SSA continued to send Plaintiff benefit checks, the amounts of which were increased periodically.  (T. at 30-32.)

However, on June 6, 2001, the SSA notified Plaintiff that due to "information about [his] work and earnings . . . it appears . . . that [his] disability ended because of substantial work."  (T. at 57.)  Plaintiff was also notified that he was not entitled to payments beginning May of 1998.  *Id.*  Yet, the SSA continued to send benefit checks to Plaintiff.  Moreover, on January 23, 2002, the SSA notified Plaintiff that "the evidence" in his disability claim was "recently reviewed" and it was found that his disability is "continuing."  (T. at 65.)

Nevertheless, apparently at some point thereafter,[2] the SSA determined that Plaintiff was overpaid benefits in the amount of $76,631.60 for the period May of 1998 through July of 2001 ("the overpayment").  *See* T. at 69.  Plaintiff requested that the SSA waive collection of the overpayment.  (T. at 73-80.)  The SSA denied this request.  (T. at 69.)

A personal conference was then held at which Plaintiff met with an SSA representative.  (T. at 94.)  On December 18, 2003, the representative found that the initial decision to deny Plaintiff's request for waiver was correct.  *Id.*

---

[2]  The record contains no dated notice of overpayment.

2

Plaintiff then requested that a hearing be held by an Administrative Law Judge ("ALJ").  (T. at 97.)  The hearing was held on September 13, 2004.  (T. at 111-30.)  On December 2, 2004, the ALJ issued a decision finding that Plaintiff received the overpayment, and that adjustment or recovery of that overpayment could not be waived.  (T. at 10-21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 23, 2005.  (T. at 3-5.)

Plaintiff commenced this action on February 3, 2006.[3]  (Dkt. No. 1.)  An answer was filed by Defendant on December 18, 2006.  Dkt. No. 10.  Pursuant to General Order 18 of the Northern District of New York, "**[w]ithin forty-five (45) days** from the filing of the answer, plaintiff shall serve and file a brief setting forth all errors which plaintiff contends entitle plaintiff to relief." (General Order No. 18 at 1, emphasis in original).  No such brief was filed.  On September 17, 2007, the Court ordered Defendant to file a brief within sixty days.  Dkt. No. 12.  The Court also ordered Plaintiff to file and serve a brief within forty-five days after service of Defendant's brief. Dkt. No. 12.  Defendant filed a brief on November 15, 2007.  Dkt. No. 14.  The Court received no response from Plaintiff.

## II.     APPLICABLE LAW

### A.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983,

---

[3]  In the Appeals Council's denial of review, it was noted that Plaintiff had sixty days in which to ask for court review.  (T. at 4.)  However, on January 5, 2006, Plaintiff was granted a thirty-day extension of time.  (T. at 6.)

985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B.    Waiver of Overpayment

The Act provides that whenever the Commissioner finds that "more or less than the correct

amount of payment has been made to [a claimant], proper adjustment or recovery shall be made."

42 U.S.C. § 404(a).  When a claimant has received more than the correct amount, the Commissioner

> shall decrease any payment . . . to which such overpaid person is entitled, or shall
> require such overpaid person or his estate to refund the amount in excess of the
> correct amount, or shall decrease any payment . . . payable to his estate or to any
> other person on the basis of the wages and self-employment income which were the
> basis of the payments to such overpaid person, or shall obtain recovery by means of
> reduction in tax refunds . . . or shall apply any combination of the foregoing.

42 U.S.C. § 404(a)(1)(A).

However, "there shall be no adjustment of payments to, or recovery by the United States from, any

person who is without fault if such adjustment or recovery would defeat the purpose of [the Act] or

would be against equity and good conscience."  42 U.S.C. § 404(b); *see* 20 C.F.R. § 404.506(a).

The Commissioner may waive recovery of an overpayment if (1) the recipient was without

fault; and (2) recovery would defeat the purposes of the Act's Supplemental Security Income ("SSI")

provisions, be against equity and good conscience, or impede efficient or effective administration of

the SSI program because of the small amount involved.  42 U.S.C. § 1383(b)(1)(B); 20 C.F.R. §

416.550.

## III.    THE PLAINTIFF

Plaintiff was born in 1952.  (T. at 22.)  He is married and has four children.  (T. at 122).  At

the time of the hearing, Plaintiff was working as a social worker.  (T. at 25.)  Plaintiff previously

worked as a tutor.  *Id.*

## IV.    DISCUSSION

### A.    Plaintiff's Failure to File a Brief

In this District, General Order No. 18 provides that the Court will "consider" the case

notwithstanding a plaintiff's failure to file a brief, albeit in a way that might be "heavily influenced by the Commissioner's version of the facts." G.O. 18 at p. 4. Where a plaintiff is proceeding *pro se*, General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for *pro se* litigants. Accordingly, the Court has, despite the *pro se* Plaintiff's failure to file a brief, examined the record to determine whether the ALJ applied the correct legal standards and reached a decision based on substantial evidence.

## B. Whether the ALJ's Decision Was Supported By Substantial Evidence

### 1. The ALJ's First Finding

In Finding # 1 in his decision, the ALJ stated that Plaintiff's entitlement to DIB ceased at the end of April of 1998 following his completion of a nine-month trial work period and therefore Plaintiff was overpaid DIB in the amount of $76,631.60 during the period May of 1998 through July of 2001. (T. at 20, Finding # 1.)

An individual who is entitled to disability insurance benefits may have a period of trial work during which any services rendered by the individual shall not be considered in determining whether his disability has ceased. 42 U.S.C. § 422(c)(2); 20 C.F.R. § 404.1592(a). The Regulations permit a claimant to perform services in as many as nine months, which need not be consecutive, without the SSA considering those services as showing that his or her disability has ended. 20 C.F.R. § 404.1592(a). Three months after completing a trial work period, a DIB recipient becomes ineligible for benefits if he or she is able to perform "substantial gainful activity." *See* 20 C.F.R. § 404.1592a(2)(I). "Substantial gainful activity" means work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

As noted, Plaintiff started working as a social worker in May of 1997.  (T. at 26.)  In the

Work Activity Report dated May 28, 2001, Plaintiff reported that he was still working as a social

worker.  (T. at 52.)  Plaintiff also repeatedly reported his salary information to the SSA.  (T. at 36,

47, 52.)  He described his basic duties as including counseling clients and working on a computer.

(T. at 47-48.)

On June 6, 2001, the SSA notified Plaintiff that the work he performed from May of 1997 to

January of 1998 was a nine-month trial work period.  (T. at 58.)  The SSA therefore decided that

Plaintiff's "disability ended because of substantial work as of February 1998."  (T. at 57.)  The

notice also explained that the SSA "pay[s] benefits for the month disability ends and the following 2

months . . . [I]n [Plaintiff's] case, this is February 1998 through April 1998."  (T. at 58.)  Therefore,

Plaintiff was no longer entitled to benefits beginning May of 1998.  (T. at 57.)  The notice also

states, "There was no evidence to indicate that you did not fully earn the salary you were paid."  *Id.*

In light of the foregoing, the ALJ properly found that Plaintiff's entitlement to DIB ceased at

the completion of a nine-month trial work period in April of 1998, and that Plaintiff was overpaid

DIB in the amount of $76,631.60 from May of 1998 to July of 2001.  Moreover, the record contains

no objection by Plaintiff regarding the finding of a trial work period.  There also are no objections as

to the fact and amount of overpayment.  Therefore, the Court recommends that the ALJ's finding in

this regard be affirmed.

### 2.    The ALJ's Second Finding

In Finding # 2 of the decision, the ALJ stated that Plaintiff "timely and repeatedly" reported

information regarding his work and earnings, as required; and that the SSA continued to send

Plaintiff DIB payments during 1998 through 2001, which reflected an annual increase in the

7

monthly benefit payment amount based on Plaintiff's reported earnings from work in the previous year.  (T. at 20, Finding # 2.)

First, Plaintiff repeatedly provided information regarding his work and pay to the SSA in Work Activity Reports, which are dated May 19, 1997, December 28, 2000, and May 28, 2001.  (T. at 26-27, 35-41, 51-56.)

Second, the record contains three letters from the SSA to Plaintiff regarding an increase in benefits.  (T. at 30-32.)  The letters, which are dated November 5, 1998, November 4, 1999, and November 3, 2000, indicate that Plaintiff's benefit amount is going to be increased to give Plaintiff credit for his earnings in the prior years.

Moreover, there is no suggestion that the SSA failed to send benefits to Plaintiff during 1998 through 2001.  Indeed, in a written statement submitted by Plaintiff in connection with the personal conference held on February 5, 2003, Plaintiff stated that the SSA never stopped sending him payments in 1998.  (T. at 71.)

The foregoing constitutes substantial evidence to support the ALJ's finding that Plaintiff "timely and repeatedly" reported information regarding his work and earnings; and that the SSA continued to send Plaintiff DIB payments during 1998 through 2001, which reflected an annual increase in the monthly benefit payment amount.  Therefore it is recommended that the ALJ's finding in this regard be affirmed.

### 3.    The ALJ's Third Finding

In Finding # 3, the ALJ stated that Plaintiff accepted the overpayment, which Plaintiff knew or should have been expected to know was incorrect based on his Work Activity Reports and on a May 23, 1997 notice from the SSA.  (T. at 21, Finding # 3.)

8

First, the record contains no suggestion that Plaintiff failed to receive, or refused, the payments in question.  Indeed, at the hearing, Plaintiff testified that after he received the payments in question, he "cashed them and [] spent the money."  (T. at 122.)

Second, the ALJ referenced the May 19, 1997 Work Activity Report in which Plaintiff provided information regarding his new job as a social worker.  (T. at 26-27.)  At the end of the form, Plaintiff checked a box that states, "I am receiving Social Security and/or Supplemental Security income disability benefits, and *I understand that the information provided above may result in my benefits being stopped*.  I have been given the opportunity to submit any evidence I wanted and to make any statements concerning my claim." *Id.* (emphasis added).

The ALJ also referenced the May 23, 1997 notice from the SSA to Plaintiff, which states that two months (October 1992[4] and May 1997) were considered to be trial work months and that information pertaining to working was enclosed.  *Id.*  The notice also states that Plaintiff's claim would be reviewed from time-to-time to see if he is still eligible for benefits.  *Id.*  The ALJ therefore concluded that this notice and enclosed explanatory materials placed Plaintiff "on notice" that "his disability could cease and his monthly [DIB] payment check might terminate based on a completion of a trial work period."  (T. at 19.)

The ALJ also pointed out that Plaintiff made no "effort to inquire about the appropriateness of continued receipt of the monthly [DIB] payments checks or to attempt to return any one of the after acquired monthly checks."  (T. at 19.)  Indeed, at the hearing, Plaintiff testified, "[The SSA] sent me a notice saying we're going to raise your rates now because now, due to your working your

---

[4]  October 1992 was not included in the nine-month trial work period referenced in the June 6, 2001 notice from the SSA.  *See* T. at 58.

9

Benefits need to be raised.  So this told me, they know I'm working and they're still sending me the checks, so the checks were mine. . . . So I thought they were my checks so I cashed them and we spent the money."  (T. at 121-22.)

The ALJ further pointed out that Plaintiff testified, "[H]onestly I thought it seemed a little odd that I was making the kind of money I was making [at his social worker job], and yet I was still getting Social Security."  (T. at 124.)  Plaintiff also stated, "[W]hen . . . I got the job in 1997, I knew I was working and that was going to, you know, be too much to have Social Security."  (T. at 120.)

In light of the foregoing, substantial evidence supports the ALJ's finding that Plaintiff accepted the overpayment and that he knew or should have been expected to know that the overpayment was incorrect.  Therefore, the Court recommends that the matter in this regard be affirmed.

### 4.      The ALJ's Fourth Finding

In Finding # 4, the ALJ stated that Plaintiff "was not 'without fault'" in accepting the overpayment.  (T. at 21, Finding # 4.)

What constitutes fault on the part of the overpaid individual depends upon whether the facts show that the incorrect payment to the individual resulted from the following:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) *With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.*

20 C.F.R. § 404.507 (emphasis added).

"No showing of bad faith is required; rather, an honest mistake may be sufficient to

constitute fault." *Center v. Schweiker*, 704 F.2d 678, 680 (2d Cir. 1983).  Moreover, "[a]lthough the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault."  20 C.F.R. § 404.507.

　　As noted above, the ALJ's findings that Plaintiff accepted the overpayment, and that Plaintiff knew or should have known that the overpayment was incorrect, are supported by substantial evidence.  *See* Part IV.3.  Therefore, the ALJ properly found that Plaintiff was not without fault, since Plaintiff accepted the overpayment which he knew or could have been expected to know was incorrect.  Accordingly, the Court recommends that the ALJ's decision in this regard be affirmed.

### 5.　　The ALJ's Fifth Finding

　　In Finding # 5, the ALJ stated that adjustment or recovery of the overpayment could not be waived.  (T. at 21, Finding # 5.)

　　The Commissioner may waive recovery of an overpayment if (1) the recipient was without fault; and (2) recovery would defeat the purposes of the Act, be against equity and good conscience, or impede efficient or effective administration of the SSI program because of the small amount involved.  20 C.F.R. § 416.550.  A claimant bears the burden of demonstrating that he is entitled to a waiver.  *Peralta ex rel. Peralta v. Barnhart*, 204 F. Supp. 2d 534, 537 (E.D.N.Y. 2002) (citing *Center*, 704 F.2d at 680).

　　The ALJ properly found that Plaintiff was not without fault.  Therefore, the ALJ also properly determined that recovery of the overpayment could not be waived, since the Commissioner may waive recovery of an overpayment if, *inter alia*, the recipient was without fault.  *See* 20 C.F.R.

11

§ 416.550.  Accordingly, the Court recommends that the ALJ's finding in this regard be affirmed.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the decision of the Commissioner of Social Security be

**AFFIRMED**, and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE**

**APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary*

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P.

72, 6(a), 6(e).

Dated: March 11, 2009
         Syracuse, New York

George H. Lowe
United States Magistrate Judge